Argued and submitted May 10, decision of the Court of Appeals affirmed on different
grounds; judgment of the circuit court reversed; case remanded to the circuit court
for further proceedings July 21, 1994

## Marvin MOUSTACHETTI,
*Respondent on Review,*

*v.*

## STATE OF OREGON,
Fairview Training Center,
George Gray, and John Does 1-10,
*Petitioners on Review.*

(CC 90C10101; CA A69332; SC S40901)

877 P2d 66

Harrison Latto, Assistant Attorney General, Salem, argued the cause for petitioners on review. With him on the petition were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Mark K. Grider, Salem, argued the cause and filed the response for respondent on review.

Richard C. Busse and Scott N. Hunt, Portland, filed a brief *amicus curiae* on behalf of the Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is an action for damages for wrongful discharge. The issue is whether defendants are immune from liability under ORS 30.265(3)(a).[1] The trial court granted summary judgment to defendants. The Court of Appeals reversed. *Moustachetti v. State of Oregon*, 122 Or App 598, 858 P2d 487 (1993). For the reasons that follow, we affirm the decision of the Court of Appeals on different grounds.

The trial court granted summary judgment to defendants.[2] The moving party has the burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. ORCP 47 C. The record on summary judgment is viewed in the light most favorable to the party opposing the motion. *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978). We therefore state the facts in the light most favorable to plaintiff.

Plaintiff was employed as a psychiatric security aide at the Fairview Training Center. In August 1985, he witnessed a supervisor abusing a resident. Plaintiff was questioned by the police about the incident and later was summoned to testify before a grand jury. Plaintiff was placed on administrative leave in November 1985. During the seven weeks he was on leave, he suffered headaches and sleeping problems, and he saw a psychiatrist.

In 1987, a civil action was brought against the state on behalf of the resident who had been abused. In the course

---

[1] ORS 30.265 provides in part:

"(3) Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

"(a) Any claim for injury to or death of any person covered by any workers' compensation law."

[2] Plaintiff named the state as a defendant, and he also named individuals acting as agents and employees of the state as defendants. He alleged that the acts of the agents were authorized, ratified, or undertaken within the scope of authority conveyed to them by the state or, alternatively, were independent acts of the individual defendants.

For purposes of this opinion, we will assume that all defendants are to be treated in the same manner as defendant state, because the parties do not argue otherwise and plaintiff has not asserted that the trial court erred in granting summary judgment on the ground that there were genuine issues of material fact as to whether the individual defendants were acting independently.

of defending that civil action, employees of the Department of Justice interviewed plaintiff. On September 1, 1987, plaintiff was placed on administrative leave pending an "abuse investigation."

In October 1987, SAIF Corporation received a workers' compensation claim from plaintiff stating that he was suffering from work-related "stress." An attached narrative explained that, after witnessing the abuse of the resident in August 1985 and later testifying before a grand jury, plaintiff developed stomach and sleeping problems and headaches. Plaintiff asserted that, when he was suspended in November 1985, his physical problems became worse and he consulted a psychiatrist; that he was reinstated in January 1986; that, in the spring of 1987, when Department of Justice employees interviewed him about the pending civil action, he suffered more stress; that he was physically injured on the job in June 1987; that in August 1987 he spoke again with Department of Justice employees about the civil action; and that, when he was released by his doctor to return to work on September 1, 1987, he was told that he was being placed on administrative leave pending an "abuse investigation." Plaintiff continued to have sleeping and eating problems and sought counseling. SAIF accepted plaintiff's claim in January 1988 as a non-disabling compensable injury, and identified August 1, 1985, as the date of injury.

On January 12, 1988, Fairview Training Center terminated plaintiff's employment. In December 1988, plaintiff was reinstated as an employee with an award of back pay and benefits pursuant to a labor arbitrator's ruling.

In January 1990, plaintiff brought this civil action against defendants for wrongful discharge, asserting that the termination of his employment with Fairview Training Center was retaliatory.

Plaintiff's complaint alleged in part:

"Defendant[s] * * * caused plaintiff's termination in retaliation for the following:

"1. [P]laintiff refused to cooperate with a cover-up of the physical beating of [a Fairview resident] on August 22, 1985, by a supervisor-employee of Fairview * * *;

"2. [P]laintiff gave a witness statement describing the above-mentioned beating of [the resident] to members of the [Department of Justice] on or about August 21, 1987, in which plaintiff made it clear that his testimony as a witness in a pending lawsuit brought by the conservators of [the resident] against [the supervisor-employee] and the State of Oregon (Fairview) * * * would be extremely damaging in that it would support and corroborate the plaintiff's case against Fairview and its employees in that proceeding."

Plaintiff further alleged that defendants' conduct described above was intentional and caused him to suffer severe emotional distress, entitling him to non-economic damages.

Defendants' answer denied plaintiff's allegations and raised the affirmative defense of sovereign immunity, ORS 30.265(3)(a). Defendants moved for summary judgment. Their motion set forth the facts relating to plaintiff's workers' compensation claim. Defendants asserted that plaintiff's injury, compensated under the Workers' Compensation Law, was the same as the injury that he alleged in this action for wrongful discharge. Therefore, defendants argued, because they are immune from plaintiff's claim under ORS 30.265(3), they were entitled to summary judgment.

Plaintiff filed a legal memorandum, but did not file any affidavits or other evidentiary material in response to defendants' motion for summary judgment. Plaintiff argued that defendants were not immune under ORS 30.265(3)(a), because ORS 656.156(2) of the Workers' Compensation Law provides:

"If injury or death results to a worker from the deliberate intention of the employer of the worker to produce such injury or death, the worker * * * may take under this chapter, and also have cause for action against the employer, as if such statutes had not been passed, for damages over the amount payable under those statutes."[3]

---

[3] Plaintiff argued to the trial court:

"There is nothing in [defendant's summary judgment motion or exhibits] that indicates that in any way, shape or form Mr. Moustachetti's claim in the workers' compensation proceeding was for an intentional act in retaliation for his cooperation or perceived cooperation against some plaintiffs [*sic*] in a pending lawsuit against the State of Oregon for client abuse at Fairview. * * * This present lawsuit[, which does allege such circumstances,] is a different set of facts."

The trial court concluded that, under ORS 30.265, defendants were immune from plaintiff's claim for wrongful discharge. Accordingly, the trial court entered summary judgment for defendants. Plaintiff appealed.

On appeal, the Court of Appeals, *in banc*, stated the question to be whether ORS 30.265(3)(a) grants immunity to a public body and its agents for liability resulting from its *intentional* injury of a worker who is subject to a Workers' Compensation Law. The court construed ORS 30.265(3)(a) and 656.156(2) together and held that in cases such as this the legislature intended that a trial court should treat plaintiff's claim as if no Workers' Compensation Law had been passed. The Court of Appeals stated:

> "We construe ORS 30.265(3)(a) and ORS 656.156(2) together to give effect to each. *Davis v. Wasco IED*, [286 Or 261, 272, 593 P2d 1152 (1979)]. Plaintiff's intentional tort claim is not 'covered' by the workers' compensation law, within the meaning of ORS 30.265(3)(a), because ORS 656.156(2) preserves his common law tort remedies and compels us to assume that the legislature did not enact a workers' compensation law regarding that claim. We do not ascribe to the legislature an intention to immunize the state or its agents from liability for intentional torts committed within the scope of employment." *Moustachetti v. State of Oregon, supra*, 122 Or App at 602-03 (footnote omitted).

The Court of Appeals therefore reversed the trial court and remanded the case. *Id.* at at 601-03. We allowed defendants' petition for review.

Plaintiff's complaint for wrongful discharge alleged that defendants terminated him in retaliation for his providing information about the abuse of the Fairview resident and for his refusing to cooperate with an alleged cover-up of that abuse. Plaintiff also alleged that he suffered "severe emotional distress," not as a separate tort claim, but in support of his claim for non-economic damages.

---

Plaintiff also argued that his complaint was based on the "deliberate intention exception" to the immunity described in ORS 656.156 "It's our contention that the State enjoys no broader immunity for its acts than any other employer in the State of Oregon with regard to the question of deliberate acts versus negligent acts."

■ The elements of a wrongful discharge claim are simple: there must be a discharge, and that discharge must be "wrongful." *See Nees v. Hocks*, 272 Or 210, 218, 536 P2d 512 (1975) (there can be circumstances in which an employer discharges an employee for such a socially undesirable motive that the employer must respond in damages for any injury done). There is no requirement that a plaintiff alleging wrongful discharge must also plead that he or she suffered "severe emotional distress." Defendants built their legal arguments in support of summary judgment around the notion that they were immune, because plaintiff's claim is for an injury "covered by worker's compensation law." ORS 30.265(3)(a). That premise, however, is erroneous. The legal "injury" alleged in an action for wrongful discharge is *the discharge*, not the type or severity of the damages suffered as a result of the discharge. Under the Workers' Compensation Law, on the other hand:

> "A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death * * *[.]" ORS 656.005(7)(a).

Plaintiff's discharge was a different "injury" than his "compensable injury" under the Workers' Compensation Law "requiring medical services or resulting in disability" that was accepted by SAIF in January 1988 and compensated under the Workers' Compensation Law.

■ ORS 30.265(3)(a) provides immunity to the state from liability for "[a]ny claim for injury to or death of any person covered by any workers' compensation law." In interpreting a statute, the court's task is to determine the intent of the legislature. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (so stating). The starting points in that determination are the text and context of the statute. *Ibid.* Words of common usage typically should be given their plain, natural, and ordinary meanings. *Ibid.*

■ Defendants argue that, in this case, ORS 30.265-(3)(a) should be construed as immunizing them from liability because plaintiff's claim is brought by a "person covered by any workers' compensation law." Defendants argue that the focus of the statute is on "person" and that the statute should be interpreted as providing immunity for any claim of *any*

person "covered by any workers' compensation law." That interpretation is not tenable, however, because it renders meaningless the phrase "for injury to or death of" in the statute. *See* ORS 174.010 (in statutory interpretation, the court is not to omit what has been inserted, and when possible should adopt statutory construction that will give effect to all particulars of a statute).

■    Defendants counter that, if the focus is placed on whether the claim is "for injury to" or "death of" any person who is "covered by any workers' compensation law," then the phrase "of any person" in the statute becomes superfluous. We disagree. Although injury and death likely would be understood in this context to refer to *personal* injury and death, even if the legislature had not included the additional phrase "of any person" in the provision, that is not the only permissible reading of the statute in the absence of the phrase "of any person." The inclusion of the phrase "of any person" in the statute providing immunity for "any claim for injury to or death of any person covered by any workers' compensation law" helps to make clear that the immunity applies, whether or not a workers' compensation claim for death or injury actually was filed.[4]

■    ORS 30.265(3)(a) establishes that every public body (and its officers, employees, and agents acting within the scope of their employment or duties) is immune from liability in a civil action (1) when the civil action states a claim for injury to or death of any person, and (2) when the injury to or death of that person occurred while that person and that injury were covered by (or under) any Workers' Compensation Law. The context of the statute does not alter what its text demonstrates and, therefore, we need not go beyond the first level of analysis to decide this case. *See PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611 (explaining the methodology).

---

[4] Moreover, from the text of ORS 30.265(3)(a), we believe that it was more likely that the legislature was focused on the nature of the claim rather than on the identity of the claimant, because the legislature could assume that most people work and that every worker should be a "person" covered by workers' compensation laws. That being so, if the statute means what the state argues that it means, almost every person would be denied a civil cause of action on a claim for wrongful discharge, because most workers are covered by workers' compensation laws.

██ ██ Plaintiff filed his workers' compensation claim in October 1987, alleging work-related "stress" beginning in August 1985 and continuing through September 1987. He was not terminated, *i.e.*, "injured" for purposes of his wrongful discharge claim, until January 1988. Although plaintiff has alleged underlying facts (such as the abuse of the resident and the subsequent cover-up) that are pertinent both to his workers' compensation claim and to his wrongful discharge claim, that does not necessarily lead to a conclusion that his wrongful discharge claim is a "claim for injury to or death of any person covered by any workers' compensation law." Because plaintiff's workers' compensation claim and his wrongful discharge claim do not allege the same injury, defendants are not immune under ORS 30.265(3)(a).

We conclude that plaintiff's wrongful discharge claim does not fall within the scope of the immunity provided by ORS 30.265(3)(a), because it is not a "claim for injury to or death of any person covered by any workers' compensation law." Defendants were not entitled to summary judgment based on the immunity provisions of ORS 30.265(3)(a).

The decision of the Court of Appeals is affirmed on different grounds. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.