Raymond PRICE, Plaintiff,

v.

MULTNOMAH COUNTY, a political subdivision of the State of Oregon; et al., Defendants.

No. CIV. 99–1593–JO.

United States District Court, D. Oregon.

Jan. 31, 2001.

Donald B. Potter, Portland, OR, for Plaintiff.

Agnes Sowle, Kathryn A. Short, Multnomah County Counsel, Portland, OR, for Defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Plaintiff Raymond Price brings this action *pro se*[1] against his former employer, Multnomah County, and his former supervisor, Karen Lamica. Plaintiff alleges five claims: wrongful discharge against Multnomah County; violation of the Oregon Family Leave Act ("OFLA") against Multnomah County; violation of the federal Family Medical Leave Act ("FMLA") against both defendants; retaliation in violation of O.R.S. 659.030(1)(f) against Multnomah County; and violation of 42 U.S.C. § 1983 against both defendants.

The case is now before the court on defendants' motion for summary judgment (# 16) on all of plaintiff's claims.[2] After reviewing the parties' submissions and for the reasons stated below, I conclude that defendants' motion should be granted as to all claims except plaintiff's FMLA interference claim.

---

1. Plaintiff initially was represented by counsel.

2. Defendants also move to strike (# 31) as hearsay portions of plaintiff's response in opposition to summary judgment. Because this disposition does not rely on the matters defendants seek to strike, the motion is denied with leave to renew any evidentiary objections in final pre-trial proceedings.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service*, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

## FACTUAL BACKGROUND

Plaintiff worked for defendant Multnomah County ("County"), first as a Community Information Technician and then as an epidemiologist ("EPI") in the Sexually Transmitted Disease ("STD") Clinic from October 1989 until his termination in February 1999.[3] In 1995, defendant Lamica became the manager of the STD Clinic and plaintiff's supervisor.

When Lamica began at the STD Clinic in 1995, she identified some problem areas in terms of staff performance. The prob-

lems included the failure to comply with certain assurances required of the federal Center for Disease Control for purposes of funding, as well as problems of attendance, tardiness, and accountability among staff members, including plaintiff. Affidavit of Karen Lamica ("Lamica Aff.") (Exhibit 40 to the Affidavit of Agnes Sowle), ¶ 9. She addressed these problems by instituting a sign in—sign out book and through progressive discipline. According to Lamica, with the exception of plaintiff, the other employees corrected their performance problems. Lamica Aff., ¶ 9.

With specific reference to plaintiff, Lamica states that she learned from the lead EPI, Victor Fox, and later observed for herself that plaintiff had problems with attendance, tardiness, and failure to be at his assigned work station. Lamica Aff., ¶ 10. Lamica verbally counseled or coached plaintiff at least weekly and, as time when on, daily concerning attendance-related issues. Lamica had other concerns about plaintiff's performance as well. *See* Lamica Aff., ¶ 10. Plaintiff admits that he had problems with attendance, tardiness, and failure to be at his assigned work station. Plaintiff's Response, p. 14, ¶ 9.

Eventually, Lamica and Fox began documenting plaintiff's attendance problems. On July 3, 1997, Fox was unable to locate plaintiff during work hours. Lamica directed plaintiff to sign in and out before taking breaks and to carry his pager at all times. Lamica Aff., ¶ 11; *see* Affidavit of Agnes Sowle ("Sowle Aff."), Exhibit 1. On July 15, 1997, Fox again could not locate plaintiff. Lamica discussed the incident with plaintiff, who did not deny the charge but told Lamica he was "stressed out" and considering consulting the Employee Assistance Program, which she encouraged.

---

**3.** EPIs work in a clinic setting, and are responsible for making contact with people known to have reportable STDs and for identifying sexual partners who may not know they have been exposed. This is part of a national and statewide effort coordinated by the federal Center for Disease Control and the various state health departments. Affidavit of Karen Lamica, ¶ 4.

Lamica Aff., ¶ 12; *see* Sowle Aff., Exhibit 2.

On December 3, 1997, Lamica discussed performance standards with plaintiff and gave him a written list of the standards expected of all EPIs. Lamica Aff., ¶ 13; Sowle Aff., Exhibit 3. According to Lamica, her counseling did not improve plaintiff's performance, so she prepared an accounting of his attendance record for the period from July 1 to December 1, 1997, which showed that he was routinely tardy and frequently used sick leave. Lamica states that the unplanned absences "exacerbated the problem for the rest of the EPI staff." Lamica Aff., ¶ 14; *see* Sowle Aff., Exhibit 4.

Lamica met with plaintiff on December 8, 1997, and gave him an oral reprimand for tardiness and excessive absenteeism. She also put him on an "expectation plan," under which he was required (1) to report to work on time and to confirm his arrival time by daily e-mail messages; (2) to document lunch times and breaks on the sign in—sign out board and to clear all field visits with Fox; and (3) to request preplanned time off at least ten working days in advance and to provide a doctor's certification for all sick leave. The expectation plan was for the period from December 15, 1997, to June 5, 1998, and, according to Lamica, if followed would have eliminated all of plaintiff's performance deficiencies. Lamica Aff., ¶ 14; *see* Sowle Aff., Exhibit 5.

On December 18, 1997, after plaintiff again was absent from the clinic without prior approval, Lamica issued a second oral reprimand. During the meeting, plaintiff told Lamica that he had been ill, as had his wife and daughter. Lamica states: "Because he had taken so many sick days, I gave him three FMLA certification forms and told him to have his physician, and those of his wife and his daughter fill out the form so that I might determine if recent and/or future absences might qualify for FMLA leave." Lamica Aff., ¶ 15; Sowle Aff., Exhibits 6 and 7. Lamica further states that "I later learned that [plaintiff's] wife had surgery on December 17, but [plaintiff] did not ask for FMLA leave to take her to the hospital, nor did he tell me that he had to take her to the hospital." Lamica Aff., ¶ 15.

On December 26, 1997, Fox reported to Lamica that plaintiff had called in sick, from the parking lot adjoining the work site, at 9:00 a.m. Lamica discussed this incident with plaintiff on December 29. During that discussion, Lamica asked him about the FMLA forms, which he had not returned. She also issued him a written reprimand for lack of dependability. Lamica Aff., ¶ 16; *see* Sowle Aff., Exhibit 9. Plaintiff responded to the reprimand by written memorandum the same day. In his memorandum, plaintiff explained that on December 26, he was dizzy and nauseous but drove to work anyway. When he got to the parking lot, he "knew [he] was going to be real sick." He further stated that "I didn't realize you wanted a doctor's excuse for each sick day" and explained that

> As of this date, I have over 61 hours of sick leave on the books, over 225 hours of vacation time and have a good work history. I have *not* been an abuser. It is my belief that things will improve. As I have stated, extenuating circumstances caused my need for sick leave usage, *not* intentional abuse. As you know, I told you when you first became my manager, that my wife has multiple sclerosis. In addition, she has been very ill this past year and was just released from the hospital 2 days before Christmas after major surgery.
>
> \* \* \* \* \* \*
>
> \* \* \* The FMLA information will also make an impact, I believe, on your understanding of my family needs.

Sowle Aff., Exhibit 10 (emphasis in original).

On January 7, 1998, Lamica responded to plaintiff's memorandum, again reminding him that he had not returned the

FMLA medical forms she had given to him, and allowing him until January 16 to do so. Lamica Aff., ¶ 16; Sowle Aff., Exhibit 11. On January 20, 1998, plaintiff gave Lamica a copy of an FMLA request his wife had to provide her employer. Lamica Aff., ¶ 19; *see* Sowle Aff., Exhibit 15. Lamica wrote the date on the form and put it in plaintiff's file. According to Lamica, plaintiff never requested any FMLA leave for himself or to take care of his wife or daughter. Lamica Aff., ¶ 19.

The record reflects that plaintiff's performance problems continued in 1998. *See* Lamica Aff., ¶¶ 17, 18, 22. On May 1, 1998, Lamica gave plaintiff a letter of contemplated discipline regarding a number of incidents. Lamica Aff., ¶ 21; Sowle Aff., Exhibit 17. Plaintiff responded in writing on May 6, 1998, explaining, in essence, that the events at issue resulted from a misunderstanding. Sowle Aff., Exhibit 18. By letter dated May 12, 1998, Lamica suspended plaintiff for two days, based on charges of absenteeism, failure to fulfill responsibilities, insubordination, and disruption of the work place. *See* Sowle Aff., Exhibits 17 and 19. In the letter, Lamica also outlined future expectations for plaintiff. Sowle Aff., Exhibit 19.

In a memorandum dated May 20, 1998, plaintiff responded to Lamica's suspension letter, describing it as "unfair" and again offering his view of events. Sowle Aff., Exhibit 21. Plaintiff's union filed a grievance on his behalf. Dave Houghton, Director of Multnomah County Health Department Disease Prevention and Control, denied the grievance at Steps 1 and 2. The union did not pursue the grievance further. *See* Sowle Aff., Exhibit 35.

After plaintiff's suspension in May 1998, he continued to have problems. On May 29 and June 4, 1998, Lamica received complaints from nurse practitioners about plaintiff's interactions with clients. *See* Lamica Aff., ¶¶ 25, 26; Sowle Aff., Exhibits 22 and 23. On July 15, 1998, Lamica met with plaintiff for a scheduled review meeting. Lamica's review of seven field visits plaintiff performed on July 9, 1998, revealed that four were adequately documented and met standards; the remainder did not. Sowle Aff., Exhibit 25.

On August 24, 1998, Division Director Houghton met with plaintiff. During the meeting, Houghton told plaintiff that he was "on thin ice" and needed to show improvement. He also informed plaintiff that based on past performance, he was "precariously close" to termination. Affidavit of David Houghton ("Houghton Aff."), ¶ 4. On September 1, 1998, during a conversation with plaintiff, plaintiff gave Houghton a copy of a request for leave dated January 2, 1998. Plaintiff told Houghton that he had given the form to Lamica on January 2, but that she had refused to sign it. Houghton Aff., ¶ 5. Lamica denies having received the leave request in January, and there is no record of it in the County's files.[4]

On September 15, 1998, Lamica met with plaintiff for a second scheduled review. A letter from Lamica to plaintiff on that date reflects that during the past two months, plaintiff's attendance had improved, but that there was a problem with plaintiff's handling of a syphilis case. Sowle Aff., Exhibit 26.

On November 12, 1998, Lamica issued a written reprimand to plaintiff for lack of dependability. Sowle Aff., Exhibit 27.[5] At a third scheduled meeting on November 17, 1998, Lamica noted, among other things, that during the past six months, plaintiff's attendance had improved. Sowle Aff., Exhibit 28. Later that same day, however, Lamica learned of an inci-

---

4. According to Dave Houghton, under County procedures, if a supervisor denies leave, he or she signs the form indicating the request was not approved. The form is then placed in the employee's file. Houghton Aff., ¶ 5.

5. Lamica's letter to plaintiff reflects that his failure to properly document his interactions with a client made it impossible to assign responsibility for a breach of client confidentiality. Sowle Aff., Exhibit 27, p. 2.

dent in which plaintiff had failed to follow procedures concerning contacting out-of-state residents. Lamica Aff., ¶ 32. That incident precipitated another written notice of contemplated discipline, specifically, termination. Sowle Aff., Exhibit 29. On November 30, 1998, plaintiff responded with a long letter of explanation. *See* Sowle Aff., Exhibit 30. Before Lamica made her final decision, she received another complaint about plaintiff. Lamica spoke with plaintiff about the incident, and he denied any wrongdoing. Lamica Aff., ¶ 35; *see* Sowle Aff., Exhibits 32 and 33. Based on the above events and the reasons set forth in her letter of November 18, 1998, Lamica decided that plaintiff should be terminated. By letter dated February 9, 1999, she notified him that he was being suspended without pay for 15 days effective February 15, 1999, with dismissal to follow. Lamica Aff., ¶ 36 Sowle Aff., Exhibit 34. Plaintiff was terminated February 9, 1999.

Following termination, plaintiff's union brought a grievance on his behalf. The grievance was heard before an arbitrator on October 27–29, 1999. The primary issue was whether the County had just cause to terminate plaintiff's employment, consistent with Article 17 of the union agreement. On December 9, 1999, the arbitrator issued a lengthy decision in favor of the County.

## DISCUSSION

Defendants move for summary judgment in their favor on all of plaintiff's claims. For the reasons stated below, defendants' motion is granted in part and denied in part.

6. Under Oregon law, the availability of a common law remedy is conditioned upon the absence of an adequate statutory remedy. *See Delaney v. Taco Time Int'l, Inc.*, 297 Or. 10, 16, 681 P.2d 114 (1984). Thus, an adequate statutory remedy will preempt an otherwise sufficient claim for common law wrongful

1. *Plaintiff's Wrongful Discharge Claim (First Claim).*

Defendants argue that plaintiff's wrongful discharge claim, which alleges that the County wrongfully discharged him "in substantial part" because he pursued his rights under OFLA, FMLA, and O.R.S. 659.040, should be dismissed because OFLA and FMLA provide adequate remedies and therefore preempt his common law claim. Alternatively, defendants contend that summary judgment is appropriate because there is no evidence that the County discharged plaintiff for pursuing his statutory rights.

Although I am inclined to agree with defendants that plaintiff's statutory remedies preempt his common law wrongful discharge claim,[6] I need not decide that issue in this case. As discussed immediately below, plaintiff has failed both to demonstrate causation between his alleged exercise of his statutory rights and his termination and to rebut defendants' evidence concerning the reasons for his termination. That failure of proof defeats his wrongful discharge claim, because he has failed to demonstrate that his termination was "wrongful." *See, e.g., Moustachetti v. State of Oregon*, 319 Or. 319, 325, 877 P.2d 66 (1994). Consequently, defendants' motion for summary judgment on plaintiff's wrongful discharge claim is granted.

2. *Plaintiff's OFLA and FMLA Claims (Second and Third Claims.)*

Plaintiff's claims under OFLA and FMLA are subject to similar analysis, and will therefore be discussed together.[7] In both claims, plaintiff alleges, in essence, that defendants retaliated against him for attempting to exercise his statutory rights by suspending him in May 1998 and termi-

discharge. *Holien v. Sears, Roebuck & Co.*, 298 Or. 76, 97, 689 P.2d 1292 (1984).

7. To the extent possible, OFLA is to be construed "in a manner that is consistent with any similar provisions of [FMLA]." O.R.S. 659.494(2).

nating him in February 1999. Complaint, ¶¶ 11, 19. Additionally, in his FMLA claim (third claim), plaintiff alleges that defendant Lamica interfered with his attempt to exercise his FMLA rights by denying his request for leave. Complaint, ¶ 17. Thus, plaintiff appears to assert both a retaliation claim and an interference claim, which are subject to different analysis.

In general, however, the FMLA[8] entitles an eligible employee, like plaintiff, to a total of twelve weeks of leave during any twelve-month period to, among other things, care for a spouse, child, or parent with a serious health condition, or because of the employee's own serious health condition if the employee is unable to perform his or her job functions. 29 U.S.C. § 2612(a)(1). An employer may not interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right available under the FMLA, or discriminate against an individual for opposing any practice made unlawful under the FMLA. 29 U.S.C. § 2615(a)(1) and (2).

Courts have recognized that the FMLA contains two distinct types of protections. First, it creates a series of substantive rights, characterized by the First Circuit as "prescriptive," " 'sett[ing] substantive floors' for conduct by employers, and creating 'entitlements' for employees." *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir.1998)(*quoting Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712–13 (7th Cir.1997)). As to these "prescriptive" rights, courts have held that the employer's subjective intent is not relevant, *see Hodgens*, 144 F.3d at 159,[9] and defendants do not argue otherwise.

The FMLA also provides protection in the event an employee suffers discrimina-

tion or retaliation because of exercising FMLA rights. *Hodgens*, 144 F.3d at 159–60. In such a case, the employer's motive is relevant, and "the issue is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Hodgens*, 144 F.3d at 160.

With these differing standards in mind, I turn to plaintiff's claims.

### a. *Retaliation*

As mentioned, plaintiff alleges both an FMLA and an OFLA retaliation claim. To establish a prima facie case of retaliation, plaintiff must show that (1) he availed himself of a protected right; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the two actions. *Morgan v. Hilti*, 108 F.3d 1319, 1325 (10th Cir.1997); *Washington v. Fort James Operating Company*, 110 F.Supp.2d 1325, 1330 (D.Or. 2000). If plaintiff meets that burden (and in the absence of direct evidence of discrimination), the burden-shifting framework for analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies.

Under *McDonnell Douglas*, once plaintiff demonstrates a prima facie case of retaliation, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If they do so, the burden shifts back to plaintiff to produce evidence that the articulated reason is a pretext for retaliation. *See Hodgens*, 144 F.3d at 160; *Hilti*, 108 F.3d at 1325. The same "burden-shifting" analysis applies to both plaintiff's FMLA and his OFLA claims.[10]

---

8. *See* footnote 7.

9. "Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer." *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir.1998).

10. In *Snead v. Metropolitan Property & Casualty Insurance Company*, 237 F.3d 1080 (9th Cir.2001), a disability discrimination in employment case, the Ninth Circuit held that the *McDonnell Douglas* burden-shifting scheme is federal procedural law, not substantive law, and applies to both federal and Oregon em-

Defendants contend that plaintiff's proof fails at two points in the above analysis. First, they argue that plaintiff has failed to prove the causation element of his prima facie case. Second, they contend that, in any event, the County had a legitimate, non-discriminatory reason for plaintiff's suspension and termination, which he has failed to rebut.

■ In earlier proceedings in this case, I discussed with plaintiff his need to produce some evidence of causation. Despite that discussion, plaintiff has failed to produce any evidence that would permit even an inference that his suspension and termination were causally connected to his attempt to avail himself of any protected rights. To the contrary, the evidence overwhelming shows that plaintiff was on "thin ice" with the County long before he raised any issue of FMLA leave, and that despite Lamica's sustained effort to counsel and work with him, plaintiff's own performance problems, not any discrimination based on leave requests, ultimately resulted in his suspension and termination. Consequently, I agree with defendants that plaintiff has failed to establish his prima facie case, and also has failed to demonstrate that defendants' reasons for the suspension and termination were a pretext for discrimination.

Accordingly, defendants' motion for summary judgment on plaintiff's OFLA claim and on the retaliation portion of his FMLA claim is granted.

### b. *Interference*

As part of his FMLA claim, plaintiff alleges that Lamica "interfered with Plaintiff's attempts to exercise his rights under the [FMLA] and denied Plaintiff's requests to exercise his rights under the [FMLA]." Complaint, ¶ 17. The court construes this allegation to be an interference claim under section 2615(a)(1) of the FMLA.

Courts evaluate interference claims under a strict liability standard, in which the employers' subjective intent is not relevant. *See, e.g., Hodgens,* 144 F.3d at 159. According to *Hodgens,* in this type of claim

> The issue is simply whether the employer provided its employee the entitlement set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave. Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer.

*Hodgens,* 144 F.3d at 159.

■ To prevail on an FMLA interference claim, plaintiff must establish the following: (1) he is an eligible employee, as defined in 29 U.S.C. § 2611(2); (2) the County is an employer under the FMLA, as defined in 29 U.S.C. § 2611(4); (3) he was entitled to take leave, as defined in 29 U.S.C. 2612(a)(1); (4) he gave notice of his intention to take leave, as defined in 29 U.S.C. § 2612(e)(1) and 29 C.F.R. §§ 825.302–.303; and (5) defendants denied him the benefits to which he was entitled under the FMLA. *See Belgrave v. City of New York,* 1999 WL 692034 at *43 (E.D.N.Y.1999), *aff'd,* 2000 WL 715544 (2nd Cir.2000).

■ There is no dispute concerning the first three elements set forth above. Defendants contend, evidently, that plaintiff never properly requested leave; consequently, defendants did not interfere with or deny benefits to which he was entitled. To accept defendants' argument, however, would require me to overlook a disputed issue of fact, something I may not do.

Plaintiff claims that he presented an FMLA request to Lamica on January 2, 1998, which Lamica denies. Giving plaintiff the benefit of the doubt, however—as I must, this creates a disputed issue of fact as to whether and how plaintiff requested leave and Lamica's response. Moreover, plaintiff did provide Lamica with a copy of

ployment discrimination claims. *Snead,* 237     F.3d 1080, 1092.

his wife's FMLA leave request, improper procedure but evidence, nonetheless, that he was attempting to exercise his FMLA rights.[11]

Defendants' fall-back position is that plaintiff failed to complete and return the medical certification forms Lamica gave him on December 18, 1997, one day after plaintiff's wife's surgery. *See* Sowle Aff., Exhibit 7. The FMLA permits an employer to require a request for leave to be supported by a medical certification, 29 U.S.C. § 2613(a), as does Article 9 of the County's union contract. Supplemental Affidavit of Agnes Sowle, Exhibit 45. The regulations under the FMLA, however, go one step further, requiring that an employer that requests medical certification also provide the employee with notice of any consequences of a failure to provide adequate certification. 29 C.F.R. §§ 825.301(b)(1)(ii), 825.305.

The parties' submissions are silent as to defendants' compliance or noncompliance with the FMLA notification requirements and the legal consequences, if any, of a failure to comply. That lack of information, together with the disputed fact issue identified above, compels me to deny defendants' motion for summary judgment on the interference portion of plaintiff's FMLA claim, at least at this juncture.

### 3. *Plaintiff's Claim Under O.R.S. 659.030(1)(f) (Fourth Claim).*

In his fourth claim, plaintiff alleges that the County unlawfully discriminated against him because he filed a complaint with the Oregon Bureau of Labor and Industries ("BOLI") and/or assisted in the investigation. Complaint, ¶ 22. This claim fails for the same lack of proof that defeats plaintiff's OFLA and FMLA retaliation claims. Accordingly, defendants' motion for summary judgment on plaintiff's fourth claim is granted.

### 4. *Plaintiff's Section 1983 Claim (Fifth Claim).*

In his fifth claim, plaintiff alleges that both defendants violated 42 U.S.C. § 1983 by harassing, suspending, and ultimately terminating him because he pursued his rights under the FMLA. Complaint, ¶ 25. As defendants correctly point out, to prevail on this claim against the County and against Lamica in an official capacity, plaintiff must allege and prove that the County had a policy, custom, or practice of discriminating against employees for pursuing FMLA rights, which he has failed to do. *See Davis v. City of Ellensburg,* 869 F.2d 1230, 1233 (9th Cir. 1989). To the extent plaintiff asserts a claim against Lamica in her individual capacity, he has failed to demonstrate that she acted intentionally or recklessly to infringe his rights under the FMLA. *See Blaylock v. Schwinden,* 862 F.2d 1352, 1354 (9th Cir.1988)(negligence insufficient to sustain § 1983 individual capacity claim). Instead, the evidence shows that if, in fact, Lamica denied plaintiff's FMLA leave request in January 1998, she did so because he did not properly support the request. Indeed, the record demonstrates that Lamica worked with plaintiff in an attempt to help him complete the necessary paperwork, which plaintiff does not dispute.

Defendants' motion for summary judgment on plaintiff's fifth claim is, therefore, granted.

### CONCLUSION

Defendants' motion for summary judgment (# 16) is granted and denied as follows: defendants' motion is granted in full as to plaintiff's first, second, fourth and fifth claims; defendants' motion is granted with respect to the retaliation portion of plaintiff's third claim but denied with respect to the interference portion. Defen-

---

**11.** Further, Lamica asked plaintiff for medical certification—a step she was under no obligation to undertake unless he had already requested leave, giving rise to an inference that, at the very least, she believed he wished to take medical leave.

dants' motion to strike (# 31) is denied with leave to renew appropriate evidentiary objections during final pre-trial proceedings.