Argued and submitted April 20, 2009, reversed and remanded March 24, petition for review denied August 18, 2010 (348 Or 669)

Patrick J. MERTEN,
an individual,
*Plaintiff-Appellant,*

*v.*

PORTLAND GENERAL ELECTRIC COMPANY,
an Oregon corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
051213506; A137350

228 P3d 623

Gerald C. Doblie argued the cause and filed the brief for appellant. With him on the reply brief was Doblie & Associates.

Jonathan S. Ostar argued the cause for respondent. With him on the brief were Martin C. Dolan, and Dolan Griggs LLP.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

WOLLHEIM, P. J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

408-b

## WOLLHEIM, P. J.

This is an action for fraud. Plaintiff filed a workers' compensation claim for injuries to his shoulder and back that he sustained while working for defendant. Defendant denied the claim for both injuries but later accepted plaintiff's claim for his shoulder injury. Plaintiff then filed this action seeking economic and noneconomic damages from defendant, alleging that defendant fraudulently promised to open plaintiff's back claim. Defendant moved for summary judgment on two grounds: first, that plaintiff's claim was subject to the exclusive jurisdiction of the Workers' Compensation Board under ORS 656.018; second, that there was no genuine issue of material fact and that defendant was entitled to judgment as a matter of law on plaintiff's fraud claim. The trial court concluded that the board had exclusive jurisdiction over plaintiff's claim, granted defendant's motion for summary judgment, and dismissed the case. We reverse and remand.

On review of a trial court's grant of summary judgment, we view the facts in the light most favorable to the nonmoving party to determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). There is no genuine issue of material fact if the record, viewed in a manner most favorable to the adverse party, could not permit any objectively reasonable juror to return a verdict for the adverse party. ORCP 47 C. Accordingly, we state the relevant facts in the light most favorable to plaintiff.

### THE FACTS

Plaintiff was a lineman for defendant, an electric company. As part of plaintiff's employment, he climbed defendant's power poles. In April 2003, plaintiff fell from a power pole, injuring his back and shoulder. He filed a workers' compensation claim for those two injuries, and defendant denied the claim.[1] At that point, plaintiff had a limited time to request a hearing protesting the denial of his claim to the board. ORS 656.319(1). Instead of requesting a hearing on

---

[1] Later, defendant opened and accepted defendant's shoulder claim.

that denial, plaintiff continued to communicate with defendant regarding his injuries. Defendant repeatedly told plaintiff that, if he submitted medical records documenting his injuries from the fall, defendant would open plaintiff's claim. However, after plaintiff's right to request a hearing on the denial expired, defendant refused to open plaintiff's back claim, even though plaintiff had submitted the requested medical records.

Defendant is self-insured and self-administers its workers' compensation program. ORS 656.403(1). Janis Baumbach and Leanne Sneath are employed by defendant to administer its workers' compensation program. Plaintiff previously had been injured three times in the course of his employment with defendant, not including the injury that is the subject of litigation in this case. For each of those injuries, defendant accepted plaintiff's claims and paid workers' compensation benefits. In the course of handling those claims, Baumbach unilaterally obtained any documentation needed to approve plaintiff's claims. Before this 2003 claim, defendant never issued a written denial to plaintiff.

After plaintiff suffered the back and shoulder injuries relevant to this case, he filed a written report of his fall and injuries, and later filed a written workers' compensation claim form with defendant in August 2003. Near the end of September, Baumbach called plaintiff to tell him that, if defendant did not receive plaintiff's medical records by October 6, 2003, it would "have to deny the claim but that *we can reverse the denial and accept the claim at any time.*"[2] (Emphasis added.) From that conversation, plaintiff understood that there was not a time limit for defendant to open his claim even if defendant initially had to deny the claim.

By that October 6 deadline, defendant had not received plaintiffs' medical records. Accordingly, defendant sent plaintiff a letter that stated, in part:

> "Under Oregon workers' compensation law, we must accept or deny a claim in 60 days. We have contacted you

---

[2] Both Baumbach and Sneath kept a diary of their phone conversations with plaintiff. Those diaries are summaries, and not verbatim transcripts of the conversations.

and your physician, David Krier, MD, in [an] attempt[ ] to obtain any related medical information concerning your claim. To date, we have not been successful in obtaining any documents from you or your physician. Therefore, at this time, we must respectfully deny your low back claim, as we do not have any medical documentation of an injury arising out of and in the course and scope of your employment.

"We will review your claim again for possible approval, once we receive medical documentation from your physician.

"The state of Oregon requires the following language:

"IF YOU THINK THIS DENIAL IS NOT RIGHT, WITHIN 60 DAYS AFTER THE MAILING OF THIS DENIAL YOU MUST FILE A LETTER WITH THE WORKERS' COMPENSATION BOARD * * *. YOUR LETTER MUST STATE THAT YOU WANT A HEARING, YOUR ADDRESS AND THE DATE OF YOUR ACCIDENT IF YOU KNOW THE DATE * * *. IF YOU DO NOT FILE A REQUEST WITHIN 60 DAYS, YOU WILL LOSE ANY RIGHT YOU MAY HAVE TO COMPENSATION UNLESS YOU CAN SHOW GOOD CAUSE FOR DELAY BEYOND 60 DAYS. AFTER 180 DAYS ALL YOUR RIGHTS WILL BE LOST."

(Uppercase in original.) Plaintiff did not read that letter.

Defendant continued to investigate the claim after it sent the letter denying plaintiff's claim. On December 29, 2003, more than 60 days after the denial, Sneath asked plaintiff to have his attending physician, Dr. Krier, send plaintiff's medical records to defendant. On January 14, 2004, plaintiff called Sneath to inquire whether defendant had received plaintiff's medical reports. Sneath told plaintiff that defendant had not received plaintiff's medical records from Krier. After the call, Sneath noted in her diary, "This is a denied claim. It was denied since the doctor could not produce any records concerning treatment." Nonetheless, on January 26, 2004, Baumbach called plaintiff again, and she told plaintiff that, if Krier were to submit plaintiff's medical records, defendant would open plaintiff's claim. Accordingly, plaintiff had Krier send medical records to defendant; defendant received the records on January 27, 2004. Baumbach also

called Krier, asked him to send plaintiff's medical records, and gave Krier defendant's fax number.

On February 26, 2004, more than 140 days after the denial, one of defendant's claims investigators interviewed plaintiff. Plaintiff thought that the investigation was conducted to determine whether to open his back and shoulder claims. The claims investigator reported that she had received the assignment to investigate plaintiff's claims on February 2, 2004, and described plaintiff's claim for injuries to his shoulder and back.

Finally, on May 6, 2004, more than 200 days after the denial, plaintiff called defendant to get a claim number to facilitate payment of plaintiff's upcoming shoulder surgery. Plaintiff also inquired about compensation for his back injury. Defendant told plaintiff that his back injury claim was no longer at issue because plaintiff was time barred from appealing the October 6, 2003, denial. Even so, defendant encouraged plaintiff *not* to seek the advice of counsel. Baumbach told plaintiff that, even though future meetings "would likely not resolve the issue[, a meeting] might help [plaintiff] understand the issue better," and she told him that "it would be better if we could meet and talk about [the denial of plaintiff's back claim] but it was his choice as to whether he pursued hiring a lawyer." Ultimately, defendant opened plaintiff's shoulder injury claim but did not open plaintiff's back injury claim.

In December 2005, plaintiff filed this action in circuit court, alleging fraud and seeking economic and noneconomic damages. Plaintiff claimed that defendant never intended to open plaintiff's back injury claim but told him that it would open the claim in order to prevent plaintiff from timely requesting a hearing on the denial. Defendant moved for summary judgment, arguing that plaintiff's fraud claim was a matter concerning a workers' compensation claim and was subject to the exclusive jurisdiction of the board. Alternatively, defendant argued that there was no genuine issue of material fact and that defendant was entitled to judgment as a matter of law on plaintiff's fraud claim. The trial court determined that it did not have subject matter jurisdiction,

granted defendant's motion for summary judgment, and dismissed the case. On appeal, the parties renew the arguments that they made to the trial court.

## THE WORKERS' COMPENSATION ACT AS PLAINTIFF'S EXCLUSIVE REMEDY

We first consider defendant's argument that the trial court did not have subject matter jurisdiction over plaintiff's fraud claim. We review the trial court's conclusion that it did not have subject matter jurisdiction over that claim for errors of law. *Spada v. Port of Portland*, 55 Or App 148, 150, 637 P2d 229 (1981).

The jurisdictional issue turns on whether the injury for which plaintiff seeks recovery arose out of and in the course of his employment. ORS 656.018(1)(a) provides, in part:

"The liability of every employer * * * is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions *arising out of and in the course of employment* that are sustained by subject workers * * *."

(Emphasis added.) That exclusive remedy provision applies irrespective of whether the claimant prevails in establishing that a compensable injury or occupational disease occurred. *See* ORS 656.018(7).[3] *But see* ORS 656.019 (permitting plaintiffs to bring civil negligence claims for work-related conditions that fail to meet the burden of proof required by ORS chapter 656); *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 135, 23 P3d 333 (2001) (describing a potential exception to workers' compensation exclusivity under Article I, section 10, of the Oregon Constitution that applies on a case-by-case basis).

The compensability of an injury illuminates whether an employee alleges an injury "arising out of and in the course of employment." A "compensable injury" is

---

[3] ORS 656.018(7) provides:

"The exclusive remedy provisions and limitation on liability provisions of this chapter apply to all injuries and to diseases, symptom complexes or similar conditions of subject workers arising out of and in the course of employment whether or not they are determined to be compensable under this chapter."

"an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death * * *; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings."

ORS 656.005(7)(a). That definition contains two prongs, which are treated as two parts of a single "work-connection" analysis. The parties appear to agree that plaintiff's back and shoulder injuries are work-related compensable injuries if they are sufficiently connected to plaintiff's employment. *See Krushwitz v. McDonald's Restaurant*, 323 Or 520, 525-26, 919 P2d 465 (1996) (describing the two-part "work-connection" test to determine whether a physical injury is compensable).

However, plaintiff alleges fraud, which did not arise out of and in the course of plaintiff's employment. There is nothing in plaintiff's employment that caused his alleged fraud damages. Those damages were caused by defendant's intentional non-work-related conduct. Moreover, plaintiff's fraud claim is not the sort that can be compensated by the Workers' Compensation Act. It cannot be treated by "medical services or result[ ] in disability or death," as required by ORS 656.005(7)(a). In fact, plaintiff could not be compensated by the workers' compensation system for damages resulting from defendant's alleged fraud. A work-related compensable injury must be established by medical evidence supported by objective findings. ORS 656.005(7)(a). Thus, plaintiff's fraud claim is not within the Workers' Compensation Law.

The Supreme Court reached a similar conclusion in *Moustachetti v. State of Oregon*, 319 Or 319, 877 P2d 66 (1994). There the court concluded that the plaintiff's wrongful discharge claim "was a different 'injury' than his 'compensable injury' under the Workers' Compensation Law 'requiring medical services or resulting in disability' that was * * * compensated under the Workers' Compensation Law." *Id.* at 325. That was because the legal injury, wrongful discharge, was not an injury that arose out of and in the course of the plaintiff's employment. Thus, the plaintiff's discharge was not subject to workers' compensation exclusively because it "was a different 'injury' than his 'compensable injury' under

Workers' Compensation Law 'requiring medical services or resulting in disability.' " *Id.*

Nonetheless, relying on *Gordineer v. Bellotti*, 100 Or App 102, 735 P2d 362, *rev den*, 310 Or 121 (1990), defendant argues that the board has exclusive jurisdiction because plaintiff's fraud claim is inseparable from his workers' compensation claim. In *Gordineer*, we held that the plaintiff could not collaterally attack a workers' compensation hearing decision in circuit court by bringing a fraud action against his employer, alleging that the employer perjured herself during the workers' compensation hearing. *Id.* at 106. *Gordineer* is unlike *Moustachetti* in that the plaintiff in *Gordineer* did not allege a separate injury; rather, he simply tried to overturn the decision in the prior workers' compensation proceeding. Conversely, in *Moustachetti*, the plaintiff brought a claim with facts that were also pertinent to the plaintiff's workers' compensation claim, but the civil claim was not a "claim for injury or death" subject to the exclusive jurisdiction of the board. Accordingly, we have held that the circuit court has subject matter jurisdiction over claims that arise out of similar facts or events as compensable injuries so long as those civil claims have their own legal basis. *See, e.g., Turnbow v. K.E. Enterprises, Inc.*, 155 Or App 59, 67, 962 P2d 764 (1998) (circuit court had subject matter jurisdiction over the plaintiff's wrongful termination claim that was factually related to his compensable injury).

Plaintiff argues that defendant's fraudulent representations denied him an opportunity to seek a remedy from the workers' compensation system. That injury is not a "compensable injury," as defined by ORS 656.005(7). If plaintiff's claim is not for a compensable injury, it is not subject to workers' compensation exclusivity. *Krushwitz*, 323 Or at 525. Moreover, unlike in *Gordineer* where the plaintiff alleged fraud in the workers' compensation hearing itself but continued to assert a compensable injury, plaintiff here seeks a remedy for fraud, which is not a "compensable injury." Plaintiff's claim is not that there was fraud during the workers' compensation hearing as in *Gordineer*, nor does plaintiff allege compensable work-related injuries. Rather, plaintiff alleges common-law fraud and seeks a remedy for noneconomic and economic damages. Accordingly, we conclude that

plaintiff's fraud claim is not subject to the workers' compensation exclusive remedy statute. ORS 656.018. The trial court incorrectly concluded that it did not have subject matter jurisdiction.

## MOTION FOR SUMMARY JUDGMENT
## ON THE FRAUD CLAIM

■ As an alternative ground for affirmance, defendant argues that the trial court could have granted defendant's motion for summary judgment on plaintiff's fraud claim. The parties thoroughly developed that issue for summary judgment, and we cannot say that the record would have been developed differently had the court reached that issue, nor does plaintiff argue that the record would have been different. Accordingly, we turn to whether defendant was entitled to summary judgment on plaintiff's fraud claim. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001) (discussing right for a different reason principle for affirming trial court's ruling).

■ To succeed on a claim for fraud, a party must prove the following elements:

> "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) [the speaker's] intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) [the hearer's] right to rely thereon; (9) and [the hearer's] consequent and proximate injury."

*Wieber v. FedEx Ground Package System, Inc.*, 231 Or App 469, 480, 220 P3d 68 (2009). Defendant argues that, even viewing the record in the light most favorable to plaintiff, no reasonable juror could find for plaintiff as to the fifth element—defendant's intent to mislead—and the seventh element—plaintiff's right to rely on the representation.

■ Defendant argues that there is no genuine issue of material fact as to defendant's intent to mislead because plaintiff testified that he did not *believe* that Baumbach intended to mislead him. Plaintiff's testimony as to his understanding of defendant's intentions is not dispositive of defendant's intentions. The intent to mislead element

requires the plaintiff to show that the defendant intended that the plaintiff act in reliance on the defendant's misrepresentation. *Knepper v. Brown*, 182 Or App 597, 605, 50 P3d 1209 (2002). Baumbach testified that she expected plaintiff to rely on the statements that she made during her phone conversations with plaintiff. Viewing the facts in the light most favorable to plaintiff, we conclude that a reasonable juror could find that Baumbach repeatedly told plaintiff that, once his medical records were submitted, defendant would open plaintiff's claim, and that Baumbach continued to make those statements to plaintiff even after his right to request a hearing on the denial had expired. Accordingly, a reasonable juror could find that defendant, through Baumbach, intended to mislead plaintiff.

We next consider whether plaintiff established a genuine issue of fact regarding the "right to rely" element of a fraud claim. That element requires "proof of the reasonableness of the reliance." *Wieber*, 231 Or App at 483. Defendant argues that no reasonable juror could find that plaintiff reasonably relied on any misstatements by defendant's claims processors because (1) plaintiff had previously filed successful workers' compensation claims and (2) plaintiff did not read defendant's certified letter that correctly described plaintiff's right to request a hearing and its time limits.

As to defendant's first contention—that plaintiff's reliance was not reasonable because he previously filed successful claims—the rule for reasonable reliance is well established:

> "Reasonableness is measured in the totality of the parties' circumstances and conduct. For example, if there is a naive and unsophisticated plaintiff on one side of the equation and an unscrupulous defendant who made active misrepresentations of fact on the other, a court might well conclude that, although a more sophisticated party would not have taken at face value the false representations of the defendant, *that* particular plaintiff was justified in doing so."

*Wieber*, 231 Or App at 484 (emphasis in original; internal quotation marks and citation omitted). Here, a reasonable juror could find that plaintiff was an unsophisticated party

and that defendant made active misrepresentations. Although plaintiff had experience filing workers' compensation claims, defendant voluntarily accepted the prior claims. Plaintiff had never successfully requested a hearing on a denied claim because it was not necessary. Plaintiff also had positive experiences working with Baumbach, who, in the past, obtained necessary records on plaintiff's behalf in order to process his claim. Accordingly, a reasonable juror could find that plaintiff's positive experience working with defendant on other claims made him a less than sophisticated party, particularly with respect to requesting a hearing on a denied claim. Moreover, given the diary entries by Baumbach and Sneath noting that plaintiff's claim had been denied, but that each continued to assure plaintiff that defendant would open plaintiff's claim once defendant received the relevant medical records, a reasonable juror could conclude that defendant made active misrepresentations.

We next consider whether plaintiff could reasonably rely on oral representations made by Baumbach and Sneath that conflicted with the written denial that defendant sent to plaintiff. In *Wieber*, we held that the plaintiff could reasonably rely on the defendant's oral interpretations of its own policy concerning a franchise contract that contradicted the written terms of the contract. 231 Or App at 484. Plaintiff here could have reasonably relied on oral representations made by Baumbach and Sneath that implied that defendant was willing to make an exception and open plaintiff's claim, just as the plaintiff in *Wieber* could reasonably rely on the defendant's representations that contradicted the written terms of the contract. Here, plaintiff had relied on defendant's help to successfully complete workers' compensation claims in the past, and the letter that defendant sent denying plaintiff's claim suggested that defendant would open plaintiff's claim even though defendant did not have to do so. Defendant stated: "We will review your claim again for possible approval, once we receive medical documentation from your physician." Consistently with that statement, Baumbach and Sneath repeatedly told plaintiff that his claim would be approved as soon as defendant received plaintiff's medical records.

Finally, defendant's conduct corroborated the statements that Baumbach and Sneath made. More than 60 days after plaintiff's claim was denied, defendant sent an investigator to interview plaintiff concerning his injuries. Plaintiff could reasonably interpret that conduct as being consistent with defendant's stated intention to open his claim. We conclude that a reasonable juror could find that plaintiff reasonably relied on defendant's misrepresentations. Defendant was not entitled to summary judgment on plaintiff's fraud claim.

Accordingly, the trial court erred in granting defendant's motion for summary judgment.

Reversed and remanded.