139

Argued and submitted September 12, 1994, decisions of the Court of Appeals on SAIF's ORICO claims reversed; cases remanded to the Court of Appeals for further proceedings May 25, 1995

STATE ACCIDENT INSURANCE
FUND CORPORATION (SAIF),
*Petitioner on Review,*

*v.*

Miles ANDERSON, D.C.,
and North Salem Chiropractic Clinic,
an assumed business name of Miles Anderson,
*Respondents on Review.*

(CC 90C-10487; CA A74840; SC S41088)

STATE ACCIDENT INSURANCE
FUND CORPORATION (SAIF),
*Petitioner on Review,*

*v.*

Steven A. DeSHAW, D.C.,
and Steven A. DeShaw, D.C., P.C.,
an Oregon professional corporation,
both doing business as
Northwood Family Chiropractic Clinic,
*Respondents on Review.*

(CC 90C-10485; CA A74839; SC S41087)
(Cases Consolidated for Argument and Opinion)

894 P2d 1152

Jas. Adams, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petitions were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Anthony A. Allen, of Law Offices of Michael B. Dye, Salem, argued the cause and filed the responses for respondents on review.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The issue in these consolidated cases is whether the circuit courts have subject matter jurisdiction to hear claims of State Accident Insurance Fund Corporation (SAIF) under the Oregon Racketeer Influenced and Corrupt Organization Act (ORICO), ORS 166.715 *et seq*, against defendant chiropractors Anderson and DeShaw,[1] for allegedly charging amounts in excess of those permitted under a provision of the Workers' Compensation Law, ORS 656.248(3).[2] The circuit court granted defendants' motions for directed verdicts on SAIF's ORICO claims, as well as on SAIF's separate claims for common law fraud. SAIF withdrew its claims for conversion, and the court entered judgments on jury verdicts for SAIF on its claims for money had and received. Defendants appealed the judgments awarding SAIF damages on its claims for money had and received. SAIF cross-appealed, assigning error to the dismissal of its other claims based on the same transaction.

In the first of the consolidated cases, *SAIF v. Anderson*, 124 Or App 651, 863 P2d 509 (1993), the Court of Appeals held that the Department of Insurance and Finance (DIF)[3] has exclusive jurisdiction in a case in which a health care provider is alleged to have made excessive charges in violation of ORS 656.248(3). Accordingly, the court reversed on defendant's appeal and affirmed on SAIF's cross-appeal. In a *per curiam* opinion, the Court of Appeals decided *SAIF v. DeShaw*, 124 Or App 677, 863 P2d 513 (1993), on identical grounds. For the reasons that follow, we reverse the decisions of the Court of Appeals and remand both cases to that court for further proceedings.

---

[1] SAIF also named North Salem Chiropractic Clinic, Anderson's assumed business name, as a defendant in its action against Anderson, and Steven A. DeShaw, D.C., P.C., DeShaw's personal corporation, as well as Northwood Family Chiropractic Clinic, DeShaw and his personal corporation's assumed business name, as defendants in its action against DeShaw. Unless otherwise indicated, we refer to all those parties as "defendants."

[2] ORS 656.248(3) provides:

"In no event shall a provider charge more than the provider charges to the general public."

[3] Now the Department of Consumer and Business Services. Or Laws 1993, ch 744, § 10.

## FACTS AND PROCEEDINGS BELOW

Defendants are licensed chiropractors. Some of defendants' patients are insured by SAIF under the workers' compensation system. As noted, SAIF filed separate complaints against defendants in circuit court, alleging claims for civil ORICO, common law fraud, conversion, and money had and received. SAIF's underlying theory in both cases was that defendants had charged SAIF more for services than they charged the general public for the same services, in violation of ORS 656.248(3). Specifically, SAIF asserted that Anderson billed SAIF "minimum office visit" charges without billing those same charges to some of his private-pay patients. SAIF asserted that DeShaw gave some of his patients a discount for paying cash. SAIF predicated its civil ORICO claims on the ground that such conduct constituted "theft by deception." ORS 164.085.[4]

Pursuant to ORCP 21, defendants moved to dismiss all SAIF's claims. They argued that, under ORS 656.248(13),[5] DIF had exclusive jurisdiction over medical fee

---

[4] ORS 164.085(1)(a) provides:

"A person, who obtains property of another thereby, commits theft by deception when, with intent to defraud, the person:

"(a) Creates or confirms another's false impression of law, value, intention or other state of mind which the actor does not believe to be true[.]"

In its complaint against Anderson, SAIF alleged:

"Defendant ANDERSON and his racketeering enterprise engaged in conduct constituting * * * 'Theft by Deception,' in violation of ORS 164.085 * * * as follows:

"* * * Pursuant to ORS 656.248, defendant ANDERSON was required to charge no more to SAIF for services rendered than that which was charged to the general public. Defendant ANDERSON, in the course of his practice, knowingly charged more to SAIF than he did to the general public. Defendant ANDERSON, with intent to defraud SAIF, created or confirmed SAIF's false impression that he was charging SAIF the same fees as he did to the general public for his services."

SAIF's complaint against DeShaw is similar.

[5] ORS 656.248(13) provides:

"When a dispute exists between an insurer or self-insured employer and a medical service provider regarding the amount of a fee for medical services, notwithstanding any other provision of this chapter, the director may resolve the dispute in such summary manner as the director may prescribe. Determinations of the director pursuant to this subsection are subject to review as provided in ORS 183.310 to 183.550."

disputes between workers' compensation medical service providers and insurers predicated on ORS 656.248(3). The circuit court denied those motions, but later granted each defendant's motion for a directed verdict on SAIF's ORICO and common law fraud claims for insufficient evidence of defendants' intent to deceive SAIF. SAIF withdrew its conversion claims.[6] Each jury returned a verdict for SAIF — $9,000 in *Anderson*, and $7,415.14 in *DeShaw* — on the remaining claims for money had and received. Judgments were entered on the verdicts.

Defendants appealed, arguing that, under ORS 656.248(13), DIF has exclusive jurisdiction over medical fee disputes and, therefore, that the circuit court lacked subject matter jurisdiction over SAIF's money had and received claims predicated on ORS 656.248(3). SAIF cross-appealed, arguing that the circuit court erred in directing verdicts against SAIF's civil ORICO and common law fraud.

In *Anderson*, the Court of Appeals relied on this court's opinion in *Brown v. Transcon Lines*, 284 Or 597, 588 P2d 1087 (1978), to determine whether an administrative remedy is exclusive:

"The threshold determination is the source of the plaintiff's claim. If the claim preexists the statute, then the administrative remedy is exclusive only if, by enacting the statute, the legislature intended to abolish the previously recognized claim. However, if the claim derives from the statute, and the statute does not imply a claim in a court, then the administrative remedy is exclusive, provided that it is not 'demonstrably inadequate.' [*Brown*,] 284 Or at 602." *Anderson*, 124 Or App at 654.

Applying that test, the Court of Appeals determined that SAIF's civil ORICO, common law fraud, and money had and received claims derived solely from ORS 656.248(3) (provider shall not charge an insurer more than the provider charges the general public). The court concluded that that statute

---

[6] It is clear that SAIF had withdrawn its conversion claim against defendant Anderson, because the circuit court in that case had ordered it to elect to proceed either on a money had and received theory or on a conversion theory. Less clear is what happened to the conversion claim against defendant DeShaw. That claim was not submitted to the jury, without any apparent order from the trial court. We surmise that here, too, SAIF had withdrawn that claim from the jury's consideration.

does not imply the availability of a claim in court. *Id.* at 655. Therefore, the court reasoned, the administrative remedy is exclusive, provided that it is not "demonstrably inadequate." *Id.* The court determined that that administrative remedy is not "demonstrably inadequate." *Id.* at 655-56.[7] As a result, the court concluded, the circuit court lacked subject matter jurisdiction over all of SAIF's claims.[8]

Accordingly, the Court of Appeals held that the circuit court erred in failing to dismiss SAIF's claim for money had and received, but correctly dismissed SAIF's ORICO and common law fraud claims. *Id.* at 657. The Court of Appeals did not reach the merits of SAIF's cross-appeal, *viz.*, it did not determine whether there was sufficient evidence to submit SAIF's ORICO and common law fraud claims to the jury.

On review, SAIF argues that, notwithstanding that ORS 656.248(13) provides an administrative remedy for medical fee disputes, the circuit court has jurisdiction over SAIF's ORICO claims.[9] Defendants argue that DIF has exclusive jurisdiction over medical fee disputes and that the circuit court therefore has no jurisdiction to consider SAIF's ORICO claims.

## ORICO

The legislature enacted ORICO in 1981. Or Laws 1981, ch 769. As pertinent here, ORICO provides:

"It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or

---

[7] The court explained that ORS 656.248(13) authorizes the director of DIF to resolve disputes arising under ORS 656.248(3) and that, pursuant to that authority, the director had promulgated rules, including one providing for sanctions for violations of ORS 656.248(3), *former* OAR 436-10-130. *Anderson*, 124 Or App at 655.

[8] In doing so, the Court of Appeals rejected defendants' concessions that SAIF's ORICO claims were properly before the circuit court, explaining:

"Although it is true that the remedies provided by ORICO 'shall not preclude the application of any other remedy, civil or criminal,' ORS 166.725(12), it does not necessarily follow that the ORICO civil remedies shall not be precluded by other remedies. ORICO does not have the effect of undermining DIF's exclusive jurisdiction to resolve disputes between health care providers and workers' compensation insurance carriers regarding alleged violations of ORS 656.248(3)." *Anderson*, 124 Or App at 657.

[9] SAIF makes no argument in this court about the circuit court's jurisdiction over SAIF's common law fraud and money had and received claims.

indirectly, in such enterprise through a pattern of racketeering activity[.]" ORS 166.720(3).

"Pattern of racketeering activity" is defined as

"engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents, provided at least one of such incidents occurred after November 1, 1981, and that the last of such incidents occurred within five years after a prior incident of racketeering activity." ORS 166.715(4).

"Racketeering activity" is defined, in part, as

"to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit:

"(a)     Any conduct that constitutes a crime, as defined in ORS 161.515, under any of the following provisions of the Oregon Revised Statutes:

"* * * * *

"(K)     ORS * * * 164.075 to 164.095 * * * relating to theft, burglary, criminal trespass and related offenses[.]" ORS 166.715(6).

As is evident from the statutes set forth above, an ORICO violation necessarily must be predicated on conduct constituting certain defined crimes. A violation of ORICO is a Class A felony. ORS 166.720(5)(a). ORICO also provides for civil remedies. ORS 166.725.[10]

---

[10] ORS 166.725(1) authorizes a court to enjoin an ORICO violation in a variety of ways, including but not limited to the following: ordering a defendant to divest any interest in the unlawful enterprise, including real property, ORS 166.725(1)(a); restricting a defendant from engaging in the same type of endeavor as the enterprise in which the defendant was engaged in violation of ORICO, ORS 166.715(1)(b); ordering the dissolution or reorganization of the enterprise, ORS 166.715(1)(c); ordering the suspension or revocation of an agency license granted to the enterprise, ORS 166.725(1)(d); and ordering the forfeiture of a corporate charter, ORS 166.725(1)(e). "Any aggrieved person" may institute a proceeding for these injunctive remedies. ORS 166.725(6). ORS 166.725(2) provides that all real or personal property derived from an ORICO violation is subject to civil forfeiture to the state. Under ORS 166.725(7), any person injured by an ORICO violation has a right to treble and, when appropriate, punitive damages, as well as a right superior to the state's right to forfeiture. The Attorney General, any district attorney, or any agency with jurisdiction over the conduct in violation of ORICO may institute civil proceedings under ORS 166.725. ORS 166.725(5). The Department of Justice or any district attorney is also entitled to seek civil penalties up to $250,000 for an ORICO violation. ORS 166.725(8).

## WORKERS' COMPENSATION LAW

In 1983, the legislature enacted ORS 656.248(3), providing that "[i]n no event shall a provider charge more than the provider charges to the general public." Or Laws 1983, ch 816, § 6; *see* OAR 436-10-090(9) (1990) (parallel regulation).[11] In 1990, the legislature enacted ORS 656.248(13), quoted above at note 5, authorizing the director of DIF to resolve medical fee disputes between worker compensation insurers and medical service providers. Or Laws 1990, ch 2, § 14; *see* OAR 436-10-110 (1990) (parallel regulation).[12]

## ANALYSIS

In support of its ORICO claims, SAIF alleged that defendants committed theft by deception when, with intent to defraud, they created or confirmed SAIF''s false impression that their billings to SAIF were in conformity with ORS 656.248(3). The question is whether, by authorizing the director of DIF to resolve medical fee disputes between insurers and providers pursuant to ORS 656.248(13), the

---

[11] OAR 436-10-090(9) (1990) provided:

"The medical provider shall bill the medical provider's usual fee charged to the general public. The submission of the bill by the medical provider shall serve as a warrant that the fee submitted is the usual fee of the medical provider for the services rendered. The department shall have the right to require documentation from the medical provider establishing that the fee under question is the medical provider's usual fee charged to the general public."

[12] OAR 436-10-110(1)(a) (1990) provided:

"In the event of a dispute about fees between the vendor and the insurer, either may request review by the [workers' compensation] division [of DIF]."

Under OAR 436-10-130(2) (1990), a violation of ORS 656.248(3) is subject to:

"* * * one or more of the following sanctions:

"(a) Reprimand by the director;

"(b) Nonpayment or recovery of fees in part, or whole, for services rendered;

"(c) Referral to the appropriate licensing board; or

"(d) Civil penalty not to exceed $1,000 for each occurrence. In determining the amount of penalty to be assessed, the director shall consider:

"(A) The degree of harm inflicted on the worker or the insurer;

"(B) Whether there have been previous violations; and

"(C) Whether there is evidence of willful violations."

Those sanctions are still available under OAR 436-10-130(1) (1995), currently in force.

legislature intended to deprive the circuit courts of subject matter jurisdiction to consider SAIF''s ORICO claims.

■■     As a threshold matter, the question argued by the parties arises only if SAIF''s ORICO claims amount to "dispute[s] between an insurer * * * and a medical service provider regarding the amount of * * * fee[s] for medical services." ORS 656.248(13). Whether they do is a question of statutory interpretation and, hence, a question of legislative intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We resolve such questions first by examining the text and context of the relevant statute, using rules of statutory construction that bear directly on how to read that text and context.[13] *Id.*

Defendants are "medical service provider[s]," within the plain, natural, and ordinary meaning of the terms. SAIF is an "insurer" by definition. ORS 656.005(14). The context of ORS 656.248(13) indicates that disputes "regarding the amount of a fee for medical services" include disputes over whether a provider has charged more than he or she charges the general public: ORS 656.248(3), prohibiting such charges, is a separate subsection of the same statute that contains ORS 656.248(13).

The question remains, however, whether SAIF''s *ORICO* claims amount to disputes regarding "the amount of * * * fee[s] for medical services." SAIF suggests that they do not, because ORICO claims do not require proof of a violation of ORS 656.248(3) as a necessary element of those claims. Instead, SAIF argues, "the effect of [ORS 656.248(3)] is only of an evidentiary nature in proving [that] defendant[s] intended to engage in a pattern of [ORICO] predicate acts of theft by deception."

---

[13] Two of those rules are pertinent here. One is required by the Workers' Compensation Law:

"Except where the context otherwise requires, the definitions given in [the Workers' Compensation Law] governs its construction." ORS 656.003.

The other is derived from case law: words of common usage typically should be given their plain, natural, and ordinary meaning. *See State v. Langley*, 314 Or 247, 256, 839 P2d 692 (1992) (illustrating rule); *Perez v. State Farm Mutual Ins. Co.*, 289 Or 295, 299, 613 P2d 32 (1980) (same).

■ Assuming that SAIF's ORICO claims encompass medical fee disputes premised on ORS 656.248(3), they also require proof of defendants' intent to defraud SAIF, so as to establish that defendants committed the predicate crime of theft by deception. ORS 166.715(6)(a)(K); ORS 164.085-(1)(a). SAIF's ORICO claims also require proof that defendants engaged in a "pattern of racketeering activity." ORS 166.720(3). As a result, SAIF's disputes with defendants are more than medical fee disputes under ORS 656.248(13). For the reasons that follow, we hold that the legislature did not intend the DIF director's jurisdiction over medical fee disputes to be exclusive in this situation.

ORICO was enacted in 1981. As of that year, SAIF could bring a civil ORICO claim predicated on theft by deception. In 1983, the legislature enacted ORS 656.248(3), prohibiting charges in excess of those charged to the general public. Consequently, as of 1983, an ORICO predicate crime of theft by deception could be based on a violation of ORS 656.248(3).

However, in 1990, the legislature enacted ORS 656.248(13), authorizing the DIF director to resolve medical fee disputes "notwithstanding any other provision of the [Workers' Compensation Law]," and "in such summary manner as the director may prescribe." Assuming, *arguendo*, that ORICO claims based on violations of ORS 656.248(3) encompass medical fee disputes within the meaning ORS 656.248(13), the question is whether, by enacting ORS 656.248(13), the legislature intended to abolish those ORICO claims.

*Brown*, on which the Court of Appeals relied, analyzed the question whether a worker had a common law claim for wrongful discharge on the day he was fired, and whether the legislature negated that claim by creating an administrative remedy for the discharge. The court said:

> "As a general rule, if a statute which provides for a new remedy shows no intention to negate, either expressly or by necessary implication, a pre-existing common law remedy, the new remedy will be regarded as merely cumulative, rather than exclusive, with the result that a plaintiff may resort to either the pre-existing remedy or the new remedy. This rule is particularly applicable when the new statutory remedy is not an adequate one. Prior decisions of this court

are consistent with this general rule." 284 Or at 610-11 (footnotes omitted).

Consistent with *Brown*, we conclude that, by enacting ORS 656.248(13), the legislature did not intend to negate SAIF's preexisting ORICO remedy for theft by deception that involves ORS 656.248(3).

We hold, therefore, that by authorizing the director of DIF to resolve medical fee disputes between insurers and providers, ORS 656.248(13), the legislature did not intend to deprive the circuit courts of subject matter jurisdiction to consider SAIF's ORICO claims. The Court of Appeals' decisions to the contrary are in error.

In its cross-appeals to the Court of Appeals, SAIF raised the issues whether there was sufficient evidence in each case to support its ORICO claims.[14] That court did not reach the merits of SAIF's cross-appeals. SAIF does not ask us to address those issues on review. Instead, SAIF asks us to remand those issues to the Court of Appeals, in the event that we reverse that court's decision. We do so.

The decisions of the Court of Appeals on SAIF's ORICO claims are reversed. The cases are remanded to the Court of Appeals for further proceedings.

---

[14] The *Anderson* trial court ruled:

"We're talking about whether a person has the knowledge necessary to have the intent to commit the crime. And the *intent of theft by deception is the intent to deceive*[.]

"'* * * * *

"I'm not satisfied that the evidence is sufficient, and I'm granting the directed verdict as to the ORICO claim[.]"

Similarly, the *DeShaw* trial court ruled:

"The Court grants the motion[] for directed verdict against the RICO * * * claim[]. I rule that the evidence is not sufficient to present an issue of fact under the applicable standard of proof[.]

"* * * for the RICO claim[] at issue in this case, * * * which involve[s] essentially the fundamental element of intent to deceive, the proof would require — required would be proof by clear and convincing evidence. And I allow the motion for directed verdict on [the ORICO claim]."