Argued and submitted October 13, 2006, affirmed July 5, 2007

SPECIALITY RISK SERVICES,
a Delaware limited liability company,
*Plaintiff-Respondent,*

*v.*

ROYAL INDEMNITY COMPANY,
a division of Royal & SunAlliance USA,
*Defendant-Appellant.*

Multnomah County Circuit Court
050403895; A130618

164 P3d 300

Krishna Balasubramani argued the cause for appellant. With him on the briefs were Rebecca A. Watkins, and Sather, Byerly & Holloway.

John L. Langslet argued the cause for respondent. With him on the brief were Camille Tourje, and Martin, Bischoff, Templeton, Langslet & Hoffman, LLP.

Before Edmonds, Presiding Judge, and Armstrong and Wollheim,* Judges.

ARMSTRONG, J.

---

\* Wollheim, J., *vice* Richardson, S. J.

.

## ARMSTRONG, J.

Defendant, a workers' compensation insurer, appeals the denial of its motion to set aside a default judgment entered against it in an action by plaintiff, another workers' compensation insurer, seeking restitution for unjust enrichment. According to defendant, the judgment is void because the trial court lacked subject matter jurisdiction over the action. Defendant argues that, under the Workers' Compensation Law, exclusive jurisdiction over the matter lay with the Workers' Compensation Board (WCB) and the Department of Consumer and Business Services (DCBS). Plaintiff responds that, as a court of general jurisdiction under the Oregon Constitution, the trial court had jurisdiction over its unjust enrichment claim. We conclude that the trial court did have subject matter jurisdiction and therefore affirm.

The relevant facts are not in dispute. Plaintiff and defendant are both insurance companies licensed to provide workers' compensation insurance in Oregon. As luck would have it, in 2002 they happened to be providing coverage for two different insureds with similar names: one of plaintiff's insureds was "Keystone Automotive," while one of defendant's insureds was "Keystone RV." Duvall was an employee at Keystone RV. In January 2002, Duvall filed a workers' compensation claim, and the Workers' Compensation Division (WCD) mistakenly submitted the claim to plaintiff rather than to defendant. Plaintiff mistakenly accepted the claim and began processing it under its "Keystone Automotive" account. In May 2002, Keystone Automotive informed plaintiff that Duvall was not one of its employees, and never had been.

Realizing that it had mistakenly accepted the claim, plaintiff asked defendant to assume responsibility for it, but defendant declined to do so. Plaintiff then attempted to revoke its acceptance by issuing a "backup denial" letter pursuant to ORS 656.262(6)(a), a statute that allows an insurer to revoke its acceptance of a claim if, among other things, it "later obtains evidence" that it is not responsible for the claim. At a subsequent hearing, in which defendant was joined, an administrative law judge (ALJ) ruled that plaintiff

was barred from issuing a backup denial because the evidence on which the denial was based—*i.e.*, that plaintiff was not the correct insurer—did not qualify as later-obtained evidence. *See Barrett Business Services, Inc. v. Stewart*, 178 Or App 145, 151, 35 P3d 1055 (2001) (" 'Later obtained evidence' does not include evidence that the employer either had, or in the exercise of reasonable diligence should have had, at the time of acceptance * * *."). The WCB affirmed the ALJ's order, explaining that ORS 656.262(6)(a) plainly prevented plaintiff from backing out of its acceptance and that, as an administrative agency, it was a "creature of statute" that lacked "the powers of a court of equity" to reach any other result. Plaintiff did not seek review of the WCB order.

Plaintiff reached a global settlement with Duvall and paid his claim. Plaintiff then initiated a circuit court action against defendant for unjust enrichment. Plaintiff's complaint alleged that defendant was the insurer who should have covered the claim and that defendant had been unjustly enriched when plaintiff was forced to pay the claim. Plaintiff sought $49,497 in damages, including the cost of the settlement and attorney fees and costs that plaintiff had incurred in attempting to defend against the claim. Defendant did not timely answer. On June 8, 2005, the trial court entered a default judgment against defendant.

Pursuant to ORCP 71 B(1), defendant then moved to set aside the judgment as void. Defendant argued that the circuit court lacked subject matter jurisdiction over plaintiff's action because the legislature, in creating the workers' compensation system, had vested exclusive jurisdiction for such matters in the WCB and the DCBS. The trial court denied the motion, concluding that the circuit court that had entered the default judgment, as a court of general jurisdiction, did have jurisdiction over plaintiff's unjust enrichment claim.

Defendant now appeals, renewing its argument that the default judgment that the court entered is void because the circuit court that entered it lacked subject matter jurisdiction. Defendant contends that at the core of plaintiff's complaint is just the kind of workers' compensation dispute that the legislature intended to remove from the courts when it passed the Workers' Compensation Law. Indeed, according to

defendant, plaintiff's complaint—although clothed as an action for unjust enrichment—is really nothing more than an effort to litigate the question already decided in the backup denial hearing, namely, which insurer is responsible for paying Duvall's workers' compensation claim. Defendant argues that the legislature created specific administrative procedures for addressing such a question, before the WCB and the DCBS, and that it intended those procedures and the resulting remedies to be exclusive and to foreclose an equitable action like the one brought by plaintiff.

Plaintiff responds that the default judgment is not void because the trial court had jurisdiction over its claim. Plaintiff denies that its equitable claim raises the same issue already decided in the backup denial hearings. The issue it raised in its lawsuit, plaintiff argues, was not whether it was "responsible," under the workers' compensation statutes, for paying Duvall's claim, but simply whether, as a matter of equity, defendant should have to reimburse plaintiff for a claim that plaintiff mistakenly accepted and that plaintiff had already paid. Plaintiff argues that none of the administrative remedies cited by defendant is even applicable under circumstances of this case, and nothing in the workers' compensation statutes demonstrates that the legislature intended to divest the courts of jurisdiction over a claim for unjust enrichment of the type at issue here. Jurisdiction over that kind of equitable action, plaintiff argues, remains vested in the circuit courts.

Whether a court has subject matter jurisdiction is a question of law. *See Estate of Selmar A. Hutchins v. Fargo*, 188 Or App 462, 466, 72 P3d 638 (2003). Subject matter jurisdiction exists when the constitution or the legislature authorizes a specific court to do something about the specific kind of dispute at issue. *School Dist. No. 1, Mult. Co. v. Nilsen*, 262 Or 559, 566, 499 P2d 1309 (1972). Under the Oregon Constitution, circuit courts have subject matter jurisdiction over all actions unless a statute or rule of law divests them of jurisdiction. *State v. Terry*, 333 Or 163, 186, 37 P3d 157 (2001), *cert den*, 536 US 910, 122 S Ct 2368, 153 L Ed 2d 189 (2002); *see* Or Const, Art VII (Original), § 9 ("All judicial power, authority, and jurisdiction not vested by this Constitution, or

by laws consistent therewith, exclusively in some other Court shall belong to the Circuit Courts[.]"); Or Const, Art VII (Amended), § 2 (retaining the jurisdictional scheme set out in original Article VII). As a general rule, in order to divest the circuit courts of jurisdiction, the legislature must do so expressly. The legislature may also do so, however, by creating administrative procedures and remedies that " 'by necessary implication' " are intended to be exclusive. *SAIF v. Anderson/DeShaw*, 321 Or 139, 149, 894 P2d 1152 (1995) (quoting *Brown v. Transcon Lines*, 284 Or 597, 610-11, 588 P2d 1087 (1978)). However, if a remedy at law preexists a statute creating an administrative remedy, then the administrative remedy is exclusive only if, by enacting the statute, the legislature intended to replace or "negate" the previously recognized remedy. *Brown*, 284 Or at 610-11 ("[I]f a statute which provides for a new remedy shows no intention to negate, either expressly or by necessary implication, a pre-existing common law remedy, . the new remedy will be regarded as merely cumulative, rather than exclusive, with the result that a plaintiff may resort to either the pre-existing remedy or the new remedy."); *see also Anderson/DeShaw*, 321 Or at 149-50 (same).

■ ■ Restitution for unjust enrichment is a venerable claim for relief sounding in equity, the underlying principles of which date back to Roman law and the *Digest* of Justinian. *See* James Gordley, *The Common Law in the Twentieth Century: Some Unfinished Business*, 88 Cal L Rev 1815, 1869 (2000) (tracing development of unjust enrichment and the law of restitution). Under Article VII (Original), section 9, Oregon's courts have jurisdiction over unjust enrichment claims. *See, e.g., Summer Oaks Limited Partnership v. McGinley*, 183 Or App 645, 654, 55 P3d 1100 (2002), *rev den*, 335 Or 255 (2003) (describing the elements of a claim for unjust enrichment). Indeed, the parties do not dispute that the circuit court that entered the default judgment had jurisdiction, generally, over unjust enrichment claims. At issue is only whether the legislature divested it of jurisdiction over the type of claim at issue in this case by creating an exclusive administrative remedy within the Workers' Compensation Law that effectively "negates" that jurisdiction.

■ Defendant, as we have noted, argues that the legislature *did* negate plaintiff's claim when it created the workers' compensation system. Its argument takes two tacks, focusing first on the overall policy of the workers' compensation scheme and then proceeding to focus more narrowly on two specific statutory remedies within it. Defendant first argues that circuit court jurisdiction over plaintiff's complaint is inconsistent with the underlying purpose of the workers' compensation system as a whole, which, as this court recognized in *SAIF v. Harris*, 66 Or App 165, 672 P2d 1384 (1983), *rev den*, 298 Or 334 (1984), is to move workers' compensation disputes out of the courts. Next, defendant identifies specific statutory remedies—ORS 656.262(6) and ORS 656.307—that, it claims, provide administrative fora in which the merits of plaintiff's claims might be addressed and which the legislature intended would be exclusive. We consider each argument in turn.

Defendant first argues that the purpose of the Workers' Compensation Law was to "create a single system to address all aspects of workers' compensation claims and avoid litigation." Moreover, under *Harris*, defendant argues, the workers' compensation system, when considered as a whole, reveals that the legislature intended to divest the courts of jurisdiction over workers' compensation disputes. Thus, according to defendant, allowing plaintiff to bring its equitable claim in circuit court would be counter to the policy of the Workers' Compensation Law and counter to our decision in *Harris*.

We disagree. *Harris* involved a claimant who had suffered a back injury and to whom the workers' compensation department initially determined permanent partial disability should be awarded. 66 Or App at 167. However, after SAIF paid the award, the department determined that the claimant was not entitled to permanent partial disability. SAIF brought an action in state court seeking to recover the amount previously paid to the claimant. After the court granted summary judgment to SAIF, the claimant appealed, asserting that the court lacked jurisdiction to consider the case. *Id.* We reversed, agreeing with the claimant that the court lacked subject matter jurisdiction. *Id.* at 168. We reasoned that the legislature had unequivocally provided that

the department had exclusive jurisdiction over "matters concerning a claim." We noted that ORS 656.708(3) expressly provided that the hearings division has responsibility for "all cases, disputes, and controversies" regarding such matters, and, on that basis, concluded that, "a review of the entire act reveals a deliberate purpose to separate jurisdiction over workers' compensation cases almost totally from the trial courts. The District Court had no jurisdiction." *Id*.

■ Our decision in *Harris* was predicated on the facts that (1) an injured worker's right to compensation was at issue, so the case was "a matter concerning a claim" under the statute, and (2) the Workers' Compensation Law expressly provides, in very broad language, that the hearings division had authority over "matters concerning a claim." That decision was in keeping with the stated purpose of the act, which is to provide *injured workers* a forum for obtaining relief without having to resort to "long and costly litigation." ORS 656.012. Indeed, following *Harris*, we have repeatedly concluded that, for the class of cases that constitute "matters concerning a claim," the decision and review provisions of the Workers' Compensation Law are exclusive. *See, e.g., Gordineer v. Bellotti*, 100 Or App 102, 106, 785 P2d 362, *rev den*, 310 Or 121 (1990); *SAIF v. Johnson*, 99 Or App 64, 67, 781 P2d 374 (1989), *rev den*, 309 Or 334 (1990); *Carr v. US West Direct Co.*, 98 Or App 30, 34, 779 P2d 154, *rev den*, 308 Or 608 (1989); *Hayden v. Workers' Compensation Dept.*, 77 Or App 328, 331-32, 713 P2d 612 (1986).

■ In this case, however, unlike in *Harris*, the underlying dispute does not involve an injured worker and is not a "matter concerning a claim." The latter phrase—which is expressly defined in the Law—refers to "those matters in which a worker's right to receive compensation, or the amount thereof, are directly at issue." ORS 656.704(3)(a). Here, the injured worker's right to compensation is not "directly at issue"; the dispute is between two insurers regarding reimbursement for a claim that has already been paid. The only issue raised in plaintiff's complaint is whether defendant was unjustly enriched when plaintiff paid Duvall's claim. Duvall's right to workers' compensation benefits has already been decided, and the claim has already been paid.

Because the claimant has no stake in this dispute, the reasoning in *Harris* that led us to conclude that the trial court lacked jurisdiction in that case is simply inapplicable.

Because the underlying dispute here is not a "matter concerning a claim" but a dispute between insurance companies, the only relevant questions are (1) whether the legislature, in drafting the workers' compensation statutes, has created specific administrative remedies intended to resolve this particular kind of dispute and, (2) if so, whether the legislature intended those remedies to replace or negate plaintiff's preexisting restitution claim. *Anderson/DeShaw*, 321 Or at 149-50.

Defendant identifies two specific workers' compensation statutes that it contends demonstrate the legislature's clear intention to divest the circuit courts of jurisdiction over disputes like the one at issue in this case: ORS 656.262(6)(a), which allows for a backup denial subject to hearings before the WCB; and ORS 656.307, which provides specific procedures, within the DCBS, for handling disputes between insurers over which insurer should pay a claim. We consider each of those statutes in turn, ascertaining their intended meanings by reference to their wording in context and referring, if necessary, to legislative history and other interpretive aids. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We conclude that neither of them indicates the legislature's intention to divest the circuit courts of jurisdiction in this case, because neither of them actually provides a forum in which the merits of plaintiff's claim might have been addressed.

We begin with ORS 656.262(6)(a), which provides, in relevant part:

> "If the insurer or self-insured employer accepts a claim in good faith, in a case not involving fraud, misrepresentation or other illegal activity by the worker, and later obtains evidence that the claim is not compensable or evidence that the insurer or self-insured employer is not responsible for the claim, the insurer or self-insured employer may revoke the claim acceptance and issue a formal notice of claim denial, if such revocation of acceptance and denial is issued

no later than two years after the date of the initial acceptance. If the worker requests a hearing on such revocation of acceptance and denial, the insurer or self-insured employer must prove, by a preponderance of the evidence, that the claim is not compensable or that the insurer or self-insured employer is not responsible for the claim."

As the text of the statute makes clear, the only issue in an ORS 656.262(6)(a) hearing is whether an insurer that has accepted a claim may revoke that acceptance on the basis of later-obtained evidence. The purpose of the hearing is to resolve that single issue, as between the claimant and the insurer. *See CNA Ins. Co. v. Magnuson*, 119 Or App 282, 850 P2d 396 (1993) (examining legislative history and explaining that ORS 656.262(6)(a) was enacted to address problem of "nervous" denials by employers who feared they would be unable to revoke their acceptance even if they later discovered that the claim was not compensable or that they were not responsible for the claim). The legislature did not include any provisions for resolving or even addressing equitable issues between insurance providers that may arise as a result. Certainly nothing in the statute's text provides the WCB with the authority to resolve, in the face of a mistakenly accepted claim, whether *another* insurer is "responsible" as a matter of equity and then to shift responsibility to that insurer. Indeed, when plaintiff availed itself of the backup denial process in this case, the board explicitly disavowed its authority to do just that. We thus conclude that ORS 656.262(6)(a) does not afford a remedy that might in any sense have been intended to replace or "negate" plaintiff's claim for restitution and, therefore, that the statute is not a basis from which we can conclude that the legislature intended to divest the courts of jurisdiction over plaintiff's claim.

■ We turn to the other statute cited by defendant, ORS 656.307, which provides, in relevant part:

"(1)(a) Where there is an issue regarding:

"* * * * *

"(C) Responsibility between two or more employers or their insurers involving payment of compensation for one or more accidental injuries;

"* * * * *

"The Director of the Department of Consumer and Business Services shall, by order, designate who shall pay the claim, if the employers and insurers admit that the claim is otherwise compensable. * * *

"* * * * *

"(2) The Director then shall request the Workers' Compensation Board chairperson to appoint an Administrative Law Judge to determine the responsible paying party. The proceedings shall be conducted in the same manner as any other hearing and any further appeal shall be conducted pursuant to ORS 656.295 and 656.298.

"(3) When a determination of the responsible paying party has been made, the director shall direct any necessary monetary adjustment between the parties involved. Any monetary adjustment not reimbursed by an insurer or self-insured employer shall be recovered from the Consumer and Business Services Fund. Any stipulation or agreement under subsection (6) of this section shall not obligate the Consumer and Business Services Fund for reimbursement without prior approval of the Director of the Department of Consumer and Business Services.

"* * * * *

"(5) The claimant shall be joined in any proceeding under this section as a necessary party, but may elect to be treated as a nominal party. If the claimant appears at any such proceeding and actively and meaningfully participates through an attorney, the Administrative Law Judge may require that a reasonable fee for the claimant's attorney be paid by the employer or insurer determined by the Administrative Law Judge to be the party responsible for paying the claim."

ORS 656.307 creates a set of procedural steps to ensure the prompt payment of compensable claims to an injured worker in those cases in which there is a dispute between employers or insurers as to which of them will be responsible for paying the claim. In order to ensure that a claimant does not have to wait for a dispute among insurers to be resolved before the claim is paid, the director makes an initial order designating

which insurer shall pay the claim, ORS 656.307(1); that is followed by proceedings before an ALJ to determine responsibility, ORS 656.307(2), and finally, any "necessary monetary adjustments" as between the insurers that are party to the proceeding, ORS 656.307(3). The claimant is, by necessity, joined in the proceeding, ORS 656.307(5).

It is evident from the statute's text that the circumstance that the legislature thus sought to address when establishing this particular administrative remedy was a dispute between employers, or their insurers, over who bears responsibility for a compensable claim. *See also Oremus v. Oregonian Pub. Co.*, 3 Or App 92, 95-96, 470 P2d 162 (1970) (describing the purpose of ORS 656.307 as to "provide for the prompt commencement of compensation payments as soon as the determination is made that the claimant suffered a compensable injury in covered employment"). That circumstance is different from the one at issue in plaintiff's complaint. This is not a case that could have been litigated under ORS 656.307. When plaintiff filed its complaint seeking restitution, the WCB already had determined that plaintiff could not issue a backup denial, and thus that plaintiff was the insurer responsible for paying the claim. There was no dispute as to responsibility as intended under ORS 656.307(1). As a result, although ORS 656.307(3) authorizes the DCBS to make "necessary monetary adjustments," that remedy would not have been not available to plaintiff in this instance, because, as a threshold matter, "responsibility" was not in issue. We conclude that ORS 656.307 does not constitute an administrative remedy that was intended to replace plaintiff's restitution remedy for a workers' compensation claim that was mistakenly accepted and ultimately paid.[1]

---

[1] Defendant argues that, under *Liberty Northwest Ins. Corp. v. SAIF Corp.*, 99 Or App 729, 733, 784 P2d 123 (1989), the DCBS is authorized by ORS 656.307(3) to order one insurer to pay another even if responsibility for the claim has already been decided before the ORS 656.307 hearing. That case, however, is inapposite. There, the party to whom the DCBS shifted costs admitted its responsibility before the ORS 656.307 hearing. Here, the party to whom plaintiff would have sought to shift costs in a such a hearing was defendant—and there is no evidence in the record that defendant admitted that it was the insurer who should have been responsible for the claim or that it otherwise indicated that it was prepared to accept that responsibility. We find no basis for concluding that ORS 656.307 authorizes the DCBS to equitably reapportion costs when the WCB has already determined a party to be responsible for the claim and no other party has come forward to accept responsibility.

In sum, we can find no indication that the legislature intended to divest the court of its jurisdiction over plaintiff's claim for restitution for unjust enrichment. The substance of plaintiff's complaint is not a "matter concerning a claim" that this court has said is within the exclusive jurisdiction of the WCB, and neither of the specific statutory remedies that defendant identifies—ORS 656.256(6) or ORS 656.307—created applicable administrative remedies, much less exclusive administrative remedies, that may be said to have negated plaintiff's claim. Nor are we aware of any other remedies created by the workers' compensation statutes that are intended to replace a claim for restitution under these circumstances. We conclude that the Workers' Compensation Law did not divest the circuit court of jurisdiction over plaintiff's claim. The default judgment entered by the circuit court is not void, and, therefore, the trial court did not err in denying defendant's ORCP 71 motion for relief from the judgment.

Affirmed.